1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JENNIFER ANN C.,[1] | ) Case No. EDCV 19-2449-JPR |
| Plaintiff, | ) |
| | ) **MEMORANDUM DECISION AND ORDER** |
| v. | ) **REVERSING COMMISSIONER** |
| | ) |
| ANDREW SAUL, Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**I.    PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision terminating her Social Security disability insurance benefits ("DIB").  The matter is before the Court on the parties' Joint Stipulation, filed August 13, 2020, which the Court has taken under submission without oral argument.  For the reasons discussed below, the Commissioner's decision is reversed and this matter is remanded for further proceedings.

---

[1] Plaintiff's name is partially redacted in line with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

**II.   BACKGROUND**

Plaintiff was born in 1978.  (Administrative Record ("AR") 201.)  She has a master's degree (AR 64) and worked as an executive director of a nonprofit organization (AR 84-85).

On November 25, 2008, Plaintiff applied for DIB, alleging that she had been unable to work since July 31, 2007.  (AR 201.) In a determination dated May 21, 2009, she was found disabled beginning on July 31, 2007.  (AR 40, 53, 112.)

On March 24, 2016, Plaintiff filed a Continuing Disability Review Report, alleging that she remained disabled because of fibromyalgia, chronic fatigue syndrome, and chronic inflammatory response syndrome, or "CIRS."  (AR 219.)  On June 9, 2016, her disability was found to have ended on June 1 of that year, terminating her benefits.  (AR 109, 118-21.)  She requested reconsideration of the cessation determination.  (AR 122-23.)  On March 6, 2017, a hearing was held before a disability hearing officer (AR 127-35), who upheld the cessation determination in a decision dated May 15, 2017 (AR 110, 136-49).

Plaintiff requested a hearing before an Administrative Law Judge.  (AR 153, 295-98.)  One was held on July 24, 2018, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert.  (<u>See</u> AR 59-91.)  In a written decision issued November 9, 2018, the ALJ found that Plaintiff's disability had ended on June 1, 2016.  (AR 37-58.)  She sought Appeals Council review (AR 197-200, 300-09), which was denied on October 21, 2019 (AR 1-7).  This action followed.

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the

Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion.  Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  It is "more than a mere scintilla, but less than a preponderance." Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."  Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).  To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).  "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for the Commissioner's.  Id. at 720-21.

**IV.  THE EVALUATION OF DISABILITY**

People are "disabled" for Social Security purposes if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

3

1          A.   The Eight-Step Evaluation Process

2          The ALJ follows an eight-step sequential evaluation process

3     to assess whether a recipient continues to be disabled.   20

4     C.F.R. § 404.1594(f); see also Nathan v. Colvin, 551 F. App'x

5     404, 407 (9th Cir. 2014); Held v. Colvin, 82 F. Supp. 3d 1033,

6     1037 (N.D. Cal. 2015).   In the first step, the Commissioner must

7     determine whether the recipient is currently engaged in

8     substantial gainful activity; if so, she is no longer disabled.

9     § 404.1594(f)(1); see also McCalmon v. Astrue, 319 F. App'x 658,

10    659 (9th Cir. 2009).   If not, the second step requires the

11    Commissioner to determine whether she has an impairment or

12    combination of impairments that meets or equals an impairment in

13    the Listing of Impairments ("Listing") set forth at 20 C.F.R.

14    part 404, subpart P, appendix 1; if so, she continues to be

15    disabled.   § 404.1594(f)(2).   If not, the third step requires the

16    Commissioner to determine whether medical improvement has

17    occurred.[2]   § 404.1594(f)(3).   If so, the analysis proceeds to

18    step four; if not, it proceeds to step five.   Id.

19         If medical improvement has occurred, the fourth step

20    requires the Commissioner to determine whether the improvement is

21    related to her ability to work — that is, whether there has been

22    an increase in the recipient's residual functional capacity

23

24         [2] Medical improvement is "any decrease in the medical
      severity of [a recipient's] impairment(s) which was present at
25    the time of the most recent favorable medical decision that [the
      recipient was] disabled or continued to be disabled."
26    § 404.1594(b)(1).   "A determination that there has been a
      decrease in medical severity" must be based on "improvement[] in
27    the symptoms, signs, and/or laboratory findings associated with
      [a recipient's] impairment(s)."   Id.
28

4

("RFC")[3] from the most recent favorable medical decision. § 404.1594(f)(4).  If medical improvement is not related to the recipient's ability to work, the analysis proceeds to step five; if it is, it proceeds to step six.  Id.

If medical improvement has not occurred or if it is not related to the recipient's ability to work, the fifth step requires the Commissioner to determine whether an exception to medical improvement applies.  § 404.1594(f)(5).  Under the first group of exceptions, the Commissioner can find a recipient no longer disabled even though she has not medically improved if she is able to engage in substantial gainful activity; if one of those exceptions applies, the analysis proceeds to step six. § 404.1594(d).  Under the second group of exceptions, the Commissioner can find a recipient no longer disabled without determining medical improvement or an ability to engage in substantial gainful activity; if one of those exceptions applies, the recipient is no longer disabled.  § 404.1594(e).  If none of the exceptions apply, the recipient continues to be disabled. § 404.1594(f)(5).

The sixth step requires the Commissioner to determine whether all the recipient's current impairments in combination are "severe," which means that they significantly limit her ability to do basic work activities; if not, she is no longer disabled.  § 404.1594(f)(6).

If the recipient's current impairments in combination are

---

[3] RFC is what a claimant can do despite existing exertional and nonexertional limitations.  § 404.1545(a)(1); see also Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

severe, the seventh step requires the Commissioner to determine whether she has sufficient RFC, "based on all [her] current impairments," to perform her past relevant work; if so, she is no longer disabled. § 404.1594(f)(7).

If the recipient is unable to do her past work, the eighth and final step requires the Commissioner to determine, using the RFC assessed in step seven, whether she can perform any other substantial gainful work; if so, she is no longer disabled. § 404.1594(f)(8). If not, she continues to be disabled. Id.

B. The ALJ's Application of the Eight-Step Process

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from May 21, 2009, the date of her most recent favorable medical decision,[4] through November 15, 2018, the date of the ALJ's decision. (AR 42.) In the 2009 CPD, Plaintiff had the impairments of fibromyalgia and chronic fatigue syndrome. (Id.) As of June 1, 2016, the ALJ found, she had medically determinable impairments of fibromyalgia, chronic fatigue syndrome, Lyme disease, CIRS, positional hypotension with dizziness, sinusitis, asthma, depression, and anxiety. (Id.) At step two, the ALJ concluded that these impairments did not meet or equal a listing. (Id.) At step three, she found that medical improvement had occurred, and Plaintiff's "medical records confirm" that by June 1, 2016, "there had been a decrease in medical severity of the impairments present at the time of the

---

[4] The most recent favorable medical decision is also known as the comparison-point decision ("CPD"). See Program Operations Manual System (POMS) DI 28010.105, U.S. Soc. Sec. Admin. (Jan. 13, 2016), http://secure.ssa.gov/apps10/poms.nsf/lnx/0428010105; see also § 404.1594(b)(7).

CPD."  (AR 44.)  At step four, she determined that Plaintiff's medical improvement was related to her ability to work "because it resulted in an increase in [her] residual functional capacity."  (AR 45.)

At step six, the ALJ found that since June 1, 2016, Plaintiff continued to have "a severe impairment or combination of impairments."  (Id.)  She also noted that Plaintiff had the "nonsevere" "medically determinable impairment of irritable bowel syndrome."  (Id.)

At step seven, she concluded that based on all of Plaintiff's impairments, she had the RFC to perform "light work" with the following limitations: "occasionally . . . climb ladders, ropes or scaffolds"; "frequently climb ramps or stairs, balance, stoop, kneel, crouch, and crawl"; "avoid exposure to unprotected heights and moving mechanical parts"; "avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation"; and "understand, remember, and carry out simple, routine work tasks."  (AR 46.)  The ALJ determined that Plaintiff was unable to perform her past relevant work as an executive director of a nonprofit organization.  (AR 51.)

At step eight, she found that Plaintiff could work as a fundraiser II, survey worker, or information clerk.  (AR 51-52.) Accordingly, she found that her disability had ended as of June 1, 2016.  (AR 52-53.)

**V.   DISCUSSION**

Plaintiff alleges that the ALJ erred in evaluating the opinion of internist Neil Hirschenbein.  (See J. Stip. at 7-17, 23-25.)  Because the ALJ failed to provide a specific and

legitimate reason for giving little weight to that opinion, the matter must be remanded for further analysis and findings.

A.   Applicable Law

Three types of physicians may offer opinions in Social Security cases: those who directly treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither.  See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996 (as amended).  A treating physician's opinion is generally entitled to more weight than an examining physician's, and an examining physician's opinion is generally entitled to more weight than a nonexamining physician's.  Id.; see § 404.1527(c)(1)-(2).[5]

The ALJ may discount a physician's opinion regardless of whether it is contradicted.  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989); see also Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008).  When a doctor's opinion is not contradicted by other medical-opinion evidence, however, it may be rejected only for a "clear and convincing" reason.  Magallanes, 881 F.2d at 751 (citations omitted); Carmickle, 533 F.3d at 1164 (citing Lester, 81 F.3d at 830-31).  When it is contradicted, the ALJ need provide only a "specific and legitimate" reason for discounting it.  Carmickle, 533 F.3d at 1164 (citing Lester, 81 F.3d at 830-31).  The weight given a doctor's opinion, moreover, depends on whether it is consistent

_____

[5] For claims filed on or after March 27, 2017, the rules in § 404.1520c (not § 404.1527) apply.  See § 404.1520c (evaluating opinion evidence for claims filed on or after Mar. 27, 2017). Plaintiff's claim was filed before March 27, 2017, however, and the Court therefore analyzes it under former § 404.1527.

8

with the record and accompanied by adequate explanation, among
other things.  See § 404.1527(c); see also Orn v. Astrue, 495
F.3d 625, 631 (9th Cir. 2007) (factors in assessing physician's
opinion include length of treatment relationship, frequency of
examination, and nature and extent of treatment relationship).

B.  Relevant Background

On July 5, 2018, Dr. Hirschenbein completed a preprinted
"PHYSICAL RESIDUAL FUNCTIONAL CAPACITY QUESTIONNAIRE."  (AR 1317-
20, 1322.)  Dr. Hirschenbein's check-box responses indicated that
Plaintiff was "incapable of even 'low stress' jobs"; could "walk
. . . [less than one] block" "without rest or severe pain"; could
"[s]it 45 minutes" "at one time . . . before needing to get up";
could "[s]tand 5 minutes" "at one time . . . before needing to
sit down [or] walk around"; could "sit . . . a total of" "less
than 2 hours" "in an 8-hour working day"; "need[ed] a job that
permit[ted] shifting positions at will from sitting, standing, or
walking"; "need[ed] to take unscheduled breaks" every 45 minutes
and lasting 10 minutes each; needed to elevate her legs at "chair
height" during "prolonged sitting"; could "rarely . . . lift less
than 10 pounds," "look up [or] hold [her] head in [a] static
position," or "twist," "stoop," or "climb stairs"; could
"occasionally . . . look down" or "turn [her] head right or
left"; could "never" lift more than 10 pounds, "crouch/squat," or
"climb ladders"; could "grasp, turn, [or] twist objects" with her
hands bilaterally one percent of the time; could "fine[ly]
manipulat[e]" the fingers on either hand five percent of the
time; and could never reach bilaterally.  (AR 1318-20.)  Her
impairments would cause her to be "absent from work . . . more

than four days [a] month."  (AR 1320.)

The statement noted that Plaintiff had chronic fatigue, fibromyalgia, CIRS, Lyme disease, anxiety, and depression, and her conditions caused fatigue, chronic pain, anxiety, depression, and "cognitive dysfunction."  (AR 1317.)  The opinion listed as supporting clinical findings "positive Lyme Western Blot"[6] and "MARCoNS[7] nasal culture" as well as "low CD57."[8]  (Id.)

The ALJ did not specifically discuss Dr. Hirschenbein's opinion; instead, she addressed it as part of a group of five doctors' opinions.  (AR 50.)  She gave "little weight" to all five.  (Id.)  Initially, she found that they "failed to reference sufficient medically acceptable objective clinical or diagnostic findings to support" them.  (Id.)  Further, they "appear[ed] to

---

[6] The Western Blot is a laboratory test to detect antibodies to Borrelia Burgdorferi, a bacteria that causes Lyme disease. Lyme Disease, Mayo Clinic, https://www.mayoclinic.org/ diseases-conditions/lyme-disease/diagnosis-treatment/drc-20374655 (last visited Mar. 26, 2021).

[7] A deep nasal swab tests for Multiple Antibiotic Resistant Coagulate Negative Staphylococci, or "MARCoNS," to identify CIRS. Chronic Inflammatory Response Syndrome, Parliament of Austl., https://www.aph.gov.au/Parliamentary_Business/Committees/House/ Health_Aged_Care_and_Sport/BiotoxinIllnesses/Report/ (last visited Mar. 26, 2021).  Some dispute that MARCoNS and CIRS are legitimate medical diagnoses, see, e.g., MARCoNS: Not a Real Diagnosis, LymeScience, https://lymescience.org/marcons/ (last visited Mar. 26, 2021), but the ALJ found CIRS as a medically determinable impairment, and Defendant has not challenged that finding or the validity of the MARCoNS test.

[8] A decrease in the CD57 lymphocyte subset may be an important marker of chronic Lyme disease.  Decreased CD57 Lymphocyte Subset in Patients with Chronic Lyme Disease, Immunology Letters, https://www.sciencedirect.com/science/ article/abs/pii/S0165247800003163?via%3Dihub (last visited Mar. 26, 2021).

have been formed based largely on [Plaintiff's] subjective complaints with little consideration of positive objective clinical or diagnostic findings." (Id.)   Finally, they were not "support[ed]" by the "objective medical evidence or other medical evidence." (Id.)   She noted that Plaintiff's "mental status and physical examinations showed no worse than mild level with appropriate mood and affect and normal range of motion and gait." (AR 50-51 (citing AR 892, 915, 968, 1074).)

      C.   <u>Analysis</u>

      Dr. Hirschenbein's opinion was inconsistent with that of internal-medicine consultative examiner Bahaa Girgis, who opined that Plaintiff was capable of a range of medium work with limitations. (AR 867-72.)   Therefore, the ALJ needed to provide only a "specific and legitimate reason" for discounting Dr. Hirschenbein's opinion, <u>Carmickle</u>, 533 F.3d at 1164 (citation omitted), but she failed to do so.

      As an initial matter, the Court cannot determine whether the ALJ intended all three reasons for discounting the opinions to apply to Dr. Hirschenbein's opinion because she lumped her discussion of his opinion with that of four other doctors. (AR 50.)   Although part of her discussion appeared to apply to all of the opinions (<u>see</u> <u>id.</u> (referring to "these opinions")), she in other parts of her discussion referenced only one of them (<u>see</u> <u>id.</u> (identifying "this opinion" and "the assessment")).

      Even assuming the ALJ intended all of her reasons for discounting the opinions to apply to Dr. Hirschenbein's, none of them were specific and legitimate.   First, she concluded that the opinion "failed to reference sufficient medically acceptable

objective clinical or diagnostic findings to support" it.  (Id.)
But Dr. Hirschenbein listed in support of his opinion three
separate clinical-test results: "positive Lyme Western Blot" and
"MARCoNS nasal culture" as well as "low CD57."  (AR 1317.)
Defendant argues that the Western Blot test results were negative
under criteria established by the Centers for Disease Control.
(J. Stip. at 21-22 (citing AR 1289-90).)  That is not a reason
the ALJ gave, however, and therefore the Court cannot consider
it.  See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225
(9th Cir. 2009) (district court must "review the ALJ's decision
based on the reasoning and factual findings offered by the ALJ —
not post hoc rationalizations that attempt to intuit what the
adjudicator may have been thinking" (citations omitted)).

     But even assuming Defendant is correct, he does not
challenge the other two test results relied on by Dr.
Hirschenbein, and in any event, Plaintiff's Lyme-disease
diagnosis is not at issue because the ALJ found that Plaintiff
had it.  (See AR 42.)  Although positive Lyme disease and CIRS
tests do not necessarily mean that Dr. Hirschenbein's limitations
were warranted, those results did constitute "objective clinical
or diagnostic" support for his findings, contrary to the ALJ's
conclusion otherwise.  See Morgan v. Colvin, No. 6:12-CV-01235-
AA., 2013 WL 6074119, at *10-11 (D. Or. Nov. 13, 2013) (ALJ
improperly discounted doctor's opinion that plaintiff suffered
from Lyme disease and mercury poisoning and had several
functional limitations from them because opinion was corroborated
by positive blood tests and specialist's opinion).  And there are
no objective laboratory tests for chronic fatigue syndrome, see

12

1  Salomaa v. Honda Long Term Disability Plan, 642 F.3d 666, 677
2  (9th Cir. 2011) (as amended), or fibromyalgia, see Benecke v.
3  Barnhart, 379 F.3d 587, 590 (9th Cir. 2004).  The ALJ erred in
4  discounting Dr. Hirchenbein's opinion on this basis.

5     The same is true of the ALJ's second reason for discounting
6  the opinion: that it was "formed based largely on [Plaintiff's]
7  subjective complaints with little consideration of positive
8  objective clinical or diagnostic findings."  (AR 50.)  As
9  previously noted, Dr. Hirschenbein's opinion specifically
10 considered objective clinical testing and thus Plaintiff's
11 subjective complaints were not its sole foundation.  Further, a
12 patient's subjective complaints generally play a significant role
13 in medical opinions on the limitations caused by fibromyalgia and
14 chronic fatigue syndrome.  See Revels v. Berryhill, 874 F.3d 648,
15 656-57, 663 (9th Cir. 2017) (because fibromyalgia is marked by
16 normal objective findings and diagnosed based on patient's
17 subjective complaints, ALJ erred by discounting treating
18 physician's opinion as unsupported by objective findings);
19 Reddick v. Chater, 157 F.3d 715, 725-26 (9th Cir. 1998) (finding
20 that ALJ's rejection of doctors' opinions on premise that they
21 were based on plaintiff's subjective complaints was "ill-suited"
22 to chronic fatigue syndrome because reasoning ran counter to
23 CDC's published framework for evaluating and diagnosing it, which
24 recognized that presence of persistent fatigue was necessarily
25 self-reported).  Therefore, the ALJ erred in discounting Dr.
26 Hirschenbein's opinion because it was "formed based largely on"
27 Plaintiff's subjective complaints.

28     Finally, the ALJ discounted Dr. Hirschenbein's opinion

1  because the objective medical evidence did not support the
2  assessment.  She erred, however, in not specifically identifying
3  which aspects of the opinion were inconsistent with which medical
4  evidence.  Indeed, a portion of her discussion of this reason
5  referred to a single doctor's "assessment" (AR 50), so it's not
6  clear that she even meant this reason to pertain to Dr.
7  Hirschenbein's functionality findings, and she failed to
8  specifically identify which portions of the opinions she was
9  discrediting on this basis.  See Embrey v. Bowen, 849 F.2d 418,
10 421-22 (9th Cir. 1988) (holding that ALJ's conclusion that
11 doctor's opinions were contrary to objective findings, including
12 "relative lack of positive findings," was not sufficiently
13 specific); Weiskopf v. Berryhill, 693 F. App'x 539, 541 (9th Cir.
14 2017) (ALJ's recitation of portions of physician's treatment
15 notes and statement that physician's opinion was inconsistent
16 with notes failed to set forth specific and legitimate reason for
17 rejecting opinion).

18      The ALJ cited several treatment notes as "show[ing] no worse
19 than mild level with appropriate mood and affect and normal range
20 of motion and gait" (AR 51), but she did not specifically discuss
21 any of the "normal" examination findings or explain how those
22 normal findings were inconsistent with the specific limitations
23 Dr. Hirschenbein assessed.  This was especially crucial with
24 fibromyalgia and chronic fatigue syndrome, which often manifest
25 with "normal" objective findings.  See Revels, 874 F.3d at 665-66
26 (finding that ALJ erred in rejecting physical therapist's
27 functional-capacity evaluation as "far beyond what is supported
28 by objective testing" because ALJ's reasoning was based on flawed

understanding of fibromyalgia, which often shows "normal" examination and test results); Daniel D. v. Comm'r, Soc. Sec. Admin., No. 3:18-cv-00654-HZ, 2019 WL 4467631, at *8 (D. Or. Sept. 17, 2019) ("Plaintiff's normal range of motion, normal strength, and normal gait are not inconsistent with a diagnosis of chronic fatigue syndrome."). Therefore, the ALJ's analysis "does not achieve the level of specificity" required by the Ninth Circuit. Embrey, 849 F.2d at 421.

The Court cannot conclude that the ALJ's failure to specifically identify which aspects of Dr. Hirschenbein's opinion were inconsistent with which pieces of medical evidence was harmless, cf. Howell v. Comm'r Soc. Sec. Admin., 349 F. App'x 181, 184 (9th Cir. 2009) (finding any error in discounting doctor's opinion based on "fill-in-the blank" form harmless because ALJ provided other appropriate reasons), because as explained, her other reasons were also infirm. And the VE testified at the hearing that there would be no work for a person who would be off task 20 percent of the workday or absent from work at least two or three times a month, as Dr. Hirschenbein opined. (AR 87.) Although there were several medical opinions that conflicted with Dr. Hirschenbein's, the ALJ did not specifically discuss the findings or opinions of those providers in giving Dr. Hirschenbein's opinion little weight.[9] See Bray, 554 F.3d at 1225. Indeed, although Defendant points to the contrary opinions of Drs. Nadella and Girgis and the state-agency

---

[9] The only thing the ALJ said in this regard was that the five doctors' opinions were "inconsistent with medical evidence from other medical and nonmedical sources." (AR 50.)

1  reviewing doctors as supporting the ALJ's rejection of Dr.
2  Hirschenbein's opinion (<u>see</u> J. Stip. at 10-11), the ALJ in fact
3  also discounted those doctors' opinion that Plaintiff could
4  perform medium work and found that Dr. Nadella's opinion "did not
5  consider the combined effect of [Plaintiff's] impairments and
6  . . . subjective complaints" (AR 50).

7      For all these reasons, the ALJ failed to provide a specific
8  and legitimate reason for discounting Dr. Hirschenbein's
9  functional assessment, and the error was not harmless.

10     When, as here, an ALJ errs and the error is not harmless,
11  the Court generally has discretion to remand for further
12  proceedings. <u>See</u> <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175-78 (9th
13  Cir. 2000) (as amended). When no useful purpose would be served
14  by further administrative proceedings, however, or when the
15  record has been fully developed, it is appropriate under the
16  "credit-as-true" rule to direct an immediate award of benefits.
17  <u>Id.</u> at 1179 (noting that "the decision of whether to remand for
18  further proceedings turns upon the likely utility of such
19  proceedings"); <u>see also</u> <u>Garrison v. Colvin</u>, 759 F.3d 995, 1019-20
20  (9th Cir. 2014). The Court has "some flexibility" in applying
21  the credit-as-true rule, however. <u>Connett v. Barnhart</u>, 340 F.3d
22  871, 876 (9th Cir. 2003). This flexibility should be exercised
23  "when the record as a whole creates serious doubt as to whether
24  the claimant is, in fact, disabled within the meaning of the
25  Social Security Act." <u>Garrison</u>, 759 F.3d at 1021.

26     Because other doctors assessed that Plaintiff could work
27  with limitations, as noted by the ALJ (<u>see generally</u> AR 105-07,
28  867-72, 883-87; <u>see also</u> J. Stip. at 17, 21 (Defendant arguing

same)), the Court has serious doubt as to whether she continues to be disabled.  <u>See</u> <u>Garrison</u>, 759 F.3d at 1021.  Further, Dr. Hirschenbein rendered his opinion in July 2018, more than two years after the finding that she was no longer disabled.  It is possible that the 2016 decision was correct at the time but that Plaintiff subsequently became disabled again.  The record needs to be developed on that front.  Further administrative proceedings would thus allow the ALJ to give proper consideration to Dr. Hirschenbein's opinion and, if she chooses to again give little weight to it, provide an adequate discussion of the reasons why.  For this reason, too, remand is appropriate.  <u>See</u> <u>id.</u>

**VI.  CONCLUSION**

Consistent with the foregoing and under sentence four of 42 U.S.C. § 405(g), IT IS ORDERED that judgment be entered REVERSING the Commissioner's decision, GRANTING Plaintiff's request for remand, and REMANDING this action for further proceedings consistent with this Memorandum Decision.

DATED:  March 29, 2021

JEAN ROSENBLUTH
U.S. Magistrate Judge

17